IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

REBECCA MUSGRAVE,          §
  Plaintiff,          §
         §
         §
v.          §
         §
         §   **Civil Action No. 4:23-cv-04168**
UNITED STATES OF AMERICA,          §
  Defendant.          §
         §
         §

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AND BRIEF IN SUPPORT THEREOF**

  COMES NOW Plaintiff, Rebecca Musgrave, and files this Response to Defendant United

States' Motion for Partial Summary Judgment and in support thereof would show the Court the

following:

**I.
BACKGROUND**

  The facts of the underlying motor vehicle crash are somewhat undisputed.[1] On March 2,

2022, at around 1:15 in the afternoon, a U.S. Postal Service Truck made a left-hand turn in front

of Mrs. Musgrave as she was traveling north on Red Oak Drive in Houston, Texas. (Ex. 4) Mrs.

Musgrave had entered Red Oak Drive by making a left-hand turn onto it from Peakwood Drive

over 500 feet to the south of where the subject crash happened. (Ex. A, attached to Defendant's

Motion for Partial Summary Judgment, p. 23, l. 3-15). According to the police report, Mrs.

Musgrave was wearing her seatbelt. (Ex. 4)

  Mrs. Musgrave was found to be confused at the scene of the crash, initially complaining of

pain in her right knee, (Ex. 16:9) then complaining of pain all over (*Id.*) and she was taken to the

---

[1] Defendant has made certain claims in their Motion for Partial Summary Judgment that are disputed and those
issues are outlined in this response, but the basic facts of the incident are undisputed.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**          **1**

hospital where it was found that she suffered a subdural hematoma in her brain, as well as comminuted fracture of the right proximal tibia, right knee periprosthetic fracture with loose tibia component, left hand injury including fractures of the 5th and 2nd digits, Rib fracture of the 5th rib, exacerbation of lower back/ lower extremity pain, cervical spinal ligament strain, and left foot fracture. (Ex. 2, and 16: 1, 7, 13) Mrs. Musgrave spent several weeks in the hospital receiving treatment and rehabilitation and underwent several surgeries including a right knee prosthetic replacement and fixation of her tibia. (Ex. 16: 6)

## II.
## SUMMARY OF ARGUMENT

Plaintiff Rebecca Musgrave has brought suit against the United States seeking damages for injuries she sustained in this motor vehicle crash. In particular, Mrs. Musgrave is seeking damages for her past and future medical expenses, her past and future pain, suffering and mental anguish, her past and future physical impairment as well as her past and future disfigurement. The Defendant has filed a Motion for Partial Summary Judgment claiming that because the United States paid for all of her medical expenses, then she cannot recover those expenses, and that there is no evidence that the "paid or incurred" medical expenses are reasonable and necessary. Defendant also claims that there is no evidence that the injuries sustained in the subject incident were actually caused by the crash.

To begin with, the United States has not paid for all of her medical expenses. As is demonstrated by the affidavit of Rebecca Musgrave, she actually paid some medical expenses herself, still owes medical expenses, and over $70,000 of the medical expenses were paid by a supplemental Medicare insurance policy issued by Aetna. In addition, the billing affidavits as well as the affidavit of Dr. Altman prove that the medical expenses that have been "paid or incurred" are reasonable and necessary charges. Lastly, not only do the medical records themselves prove

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT** 2

that her injuries were the result of this incident, but also the affidavit of Dr. Altman demonstrates that the injuries complained of are the result of this motor vehicle crash. In addition, the affidavit of Dr. Fulbright is evidence that as a result of this incident, Mrs. Musgrave suffered a traumatic brain injury with ongoing cognitive impairments and emotional issues as a result.

## III.
## SUMMARY JUDGMENT EVIDENCE

Plaintiff relies upon the following summary judgment evidence in support of her response:

A. Affidavit of Rebecca Musgrave, attached hereto as Exhibit 1;
B. Affidavit of David Altman, M.D., attached hereto as Exhibit 2;
C. Affidavit of Richard Fulbright, Ph. D., attached hereto as Exhibit 3;
D. Certified copy of the March 2, 2022 crash report, attached hereto as Exhibit 4;
E. Billing Records Affidavit from Houston Northwest Radiology Association attached hereto as Exhibit 5;
F. Billing Records Affidavit from ADS Orthopaedics, attached hereto as Exhibit 6;
G. Billing Records Affidavit from Genisis Medical Group, attached hereto as Exhibit 7;
H. Billing Records Affidavit from HCA Northwest, attached hereto as Exhibit 8;
I. Billing Records Affidavit from Townsen Memorial Hospital, attached hereto as Exhibit 9;
J. Billing Records Affidavit from Village Medical - Jilu Varghese, MD, attached hereto as Exhibit 10;
K. Billing Records Affidavit from Yancey Pain & Spine, attached hereto as Exhibit 11;
L. Billing Records Affidavit from Prime Rheumatology Clinic, attached hereto as Exhibit 12;
M. Billing Records Affidavit from Encompass Health - The Vintage, attached hereto as Exhibit 13;
N. Billing Records Affidavit from Harris County EDS 11, attached hereto as Exhibit 14;
O. Federal Rules of Evidence Rule 1006 Summary of Billing Records Affidavits, attached hereto as Exhibit 15; and
P. Excerpts from medical records from various healthcare providers who treated Mrs. Musgrave for her injuries sustained in the March 2, 2022 incident, attached hereto as Exhibit 16.

## IV.
## ARGUMENTS AND AUTHORITIES

### A.  STANDARD OF REVIEW

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**                                   3

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Fed. R. Civ. P. 56(c); *Esquivel v. Hillcoat Properties, Inc.,* 484 F.Supp.2d 582, 584 (W.D. Tex. 2007). In a summary judgment motion, the movant bears the burden of identifying an absence of evidence to support the nonmovant's case. *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.,* 310 F.3d 870, 877 (5th Cir. 2002)." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The Court must first ascertain the material factual issues and then must consider the evidence bearing on those issues, viewing the facts and the inferences to be drawn therefrom in the light most favorable to the nonmovant. *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999). The court must not make any credibility determinations or weigh any evidence. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Moreover, the court must give credence to evidence favoring the nonmovant and must disregard evidence favorable to the movant that the jury is not required to believe, including impeached or contradicted evidence favorable to the movant. *Id.* at 151.

A summary judgment proceeding does not provide a very satisfactory approach in most tort cases. *Larsen v. General Motors Corp.,* 391 F.2d 495 (8th Cir. 1968). Citing *Williams v. Chick,* 373 F.2d 330 (8th Cir.1967). It is rare to find an appropriate case for summary judgment involving negligence or products liability. *Powe v. Wagner Electric Sales Corporation,* 589 F.Supp. 657 (S.D.Miss.1984), citing *Davidson v. Stanadyne, Inc.,* 718 F.2d 1334, 1338 (5th Cir.1983).

### B. THERE IS EVIDENCE OF PAID OR INCURRED

Under the Federal Torts Claim Act, the United States is liable in the same manner as a private person for the tortious acts or omissions of its employees acting within the scope of their employment "in accordance with the law of the place where the act or omission occurred." 28

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**                                        **4**

U.S.C. § 1346(b)(1); see also *Molzof v. United States*, 502 U.S. 301, 305 (1992) ("the extent of the United States' liability under the FTCA is generally determined by reference to state law") (citations omitted). Accordingly, a federal court presiding over an FTCA claim must apply "the whole law of the State where the act or omission occurred." *Richards v. United States*, 369 U.S. 1, 11 (1962); see also *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) ("State law applies to an FTCA claim").

In Texas, where this tort occurred, Texas Civil Practice & Remedies Code Section 41.0105 limits personal injury claimant's recovery of medical expenses to the amount actually paid or the amount still owed (incurred) for that medical care. *Haygood v. de Escabedo*, 356 S.W.3d 390, 392 (Tex. 2011). In other words, a hospital's or health care provider's full billing rate, which is different from what is the actual cost, is not what can be recovered. Rather, "Paid or Incurred" refers to the amount the claimant is legally obligated to pay, excluding the inflated "chargemaster" rates. *Id.*

In this case, the difference is striking when all of the billing records are reviewed. The total charges to Mrs. Musgrave for the medical treatment she received as a result of the injuries she suffered in the March 2, 2022, motor vehicle collision total $897,403.03. (Ex. 15) However, the "paid or incurred" is only $82,535.22. *(Id.)*[2] According to the billing records, Mrs. Musgrave paid $40.00 and still owes $5,765.30. In addition, Aetna, the insurer that provides Mrs. Musgrave with a supplemental Medicare insurance policy, is seeking subrogation for $73,723.74 for the payments that it made for treatment of the injuries Mrs. Musgrave suffered in the March 2, 2022, motor vehicle crash. (Ex. 1) Not including the Medicare payments or the ChampVA payments, the total "paid or incurred" is $79,529.04. This is the amount that Mrs. Musgrave is legally obligated to pay separate and apart from what the Government paid.

---

[2] Exhibit 15 is a summary of information contained in the billing records affidavits attached hereto as exhibits 5 – 14.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**                                                    **5**

While the Defendant argues that Plaintiff cannot recover medical expenses that have been paid by the Government, it cites no case law to support such a position. Granted, the Government is certainly entitled to subrogation for those charges, however, it is customary that the Government reduces the amount of the subrogation interest by a pro-rate portion of the costs of obtaining that recovery. In other words, the proper method would be to allow the Plaintiff to recover the cost of all paid medical treatment and then allow the Government to seek reimbursement, at the normal reduced rate, rather than not allowing the Plaintiff to recover those expenses at all.

## C. THERE IS EVIDENCE THAT THE AMOUNTS ARE REASONABLE AND NECESSARY

Defendant next argues that there is no evidence that the amounts charged were reasonable and necessary. In particular, Defendant argues that the billing affidavits procedure under Texas Civil Practice & Remedies Code Section 18.001 is not applicable in Federal Court because it is a procedural rule not substantive law. While the affidavits may not support the evidence being admitted at trial, for purposes of summary judgment, affidavits are allowable. FRCP 56(c)(1)(B)(4). *See also*, *U.S. v. Stein*, 881 F.3d 853,854 (11th Cir. 2018). In addition, Dr. Altman has reviewed the billing records and opined in his affidavit that the charges were reasonable and necessary. (Ex. 2).

But it is not clear that Texas' 18.001 procedure would not apply in this case. Certainly, there is case law that suggests that because the 18.001 system is purely procedural, that it does not apply to Federal Courts. However, those cases cited by Defendant are cases in diversity. The principal provision of the Federal Tort Claims Act, originally enacted as Title IV of the Legislative Reorganization Act of 1946 is Section 1346 (b), reads in pertinent part:

> ". . . the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**                                                          **6**

Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

Section 2674, also relevant to our decision, provides:

"The United States shall be liable, respecting . . . tort claims, in the same manner and to the same extent as a private individual under like circumstances but shall not be liable for interest prior to judgment or for punitive damages."

The Tort Claims Act was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances. Under the Federal Tort Claims Act, the court must apply the "whole law" of the jurisdiction. As the United States Supreme Court held:

Thus, we conclude that a reading of the statute as a whole, with due regard to its purpose, requires application of the whole law of the State where the act or omission occurred.

*Richards v. US*, 369 U.S. 1 (1962). In the *Richards* case, The Supreme Court held that the States' choice of law procedure would apply. Thus, although choice of law procedure is procedural, the Court nevertheless held that application of the State's whole law in a Federal Tort Claims Act case would require the State's application of that procedure. Likewise, this Court should apply the "whole" law of Texas, including the procedures set out in Tex. Civ. Prac. & Rem. Code Section 18.001.

### D. THERE IS EVIDENCE THAT THE INJURIES CLAIMED BY MRS. MUSGRAVE WERE CAUSED BY THIS MOTOR VEHICLE CRASH

Mrs. Musgrave suffered the following injuries as a result of the motor vehicle crash on March 2, 2022:

1.  Subdural Hematoma and traumatic brain injury;

2.  Comminuted Fracture of her right tibia;

3.  A fracture of her right knee prosthetic;

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**                7

4. Left hand injury including fractures of the 5th and 2nd digits;

5. Rib fracture of the 5th rib;

6. Exacerbation of lower back/ lower extremity pain;

7. Cervical spinal ligament strain; and

8. Left foot fracture.

(Ex. 2; Ex. 16: 1, 6, 7, 13, 19, 21).

Defendant admits that not all injuries require expert medical testimony to prove causation. In fact, the subdural hematoma and traumatic brain injury, the right tibia fracture, the fracture of the right knee prosthetic, the rib fracture, the fractures of her left hand fingers, and her left foot fracture would fall into the category where "both the occurrence and conditions complained of are such that the general knowledge and experience of the laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence." *Guevara v. Ferrer,* 247 S.W.3d 662, 668 (Tex. 2007). ("Undoubtedly, the causal connection between some events and conditions of a basic nature (and treatment for such conditions) are within a layperson's general experience and common sense. This conclusion accords with human experience, our prior cases, and the law in other states where courts have held that causation as to certain types of pain, bone fractures, and similar basic conditions following an automobile collision can be within the common experience of lay jurors. *See Burandt v. Clarke,* 274 Or. 521, 547 P.2d 89 (1976) ("As defendants concede, medical testimony of causation between collision and injury is not essential if there is an `uncomplicated situation."'); *see also Choi v. Anvil,* 32 P.3d 1, 4 (Alaska 2001); *Roling v. Daily,* 596 N.W.2d 72, 75 (Iowa 1999); *Walton v. Gallbraith,* 15 Mich.App. 490, 166 N.W.2d 605, 606 (1969).")

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**                                    **8**

Nevertheless, Plaintiff has expert evidence that these injuries were caused by the motor vehicle collision. In particular, Dr. Altman, who has prepared a life care plan for future medical expenses for Mrs. Musgrave, had to determine what injuries she suffered in the incident before he could determine what future medical treatment she would need for those injuries. He determined that in reasonable probability, Mrs. Musgrave suffered the above-referenced injuries as a result of this motor vehicle crash. (Ex. 2) In addition, Dr. Fulbright, a neuropsychologist who evaluated Mrs. Musgrave has opined that in reasonable probability, Mrs. Musgrave suffered a traumatic brain injury in this crash and is still having cognitive and physical impairments as a result of that brain injury that will continue into the future. (Ex. 3)

There is no question that Mrs. Musgrave had medical conditions prior to this incident, although not sure that Defendant's recitation of those injuries in their Motion for Partial Summary Judgment is 100% accurate. However, she did not have any of the injuries that are attributable to this accident including, but not limited to subdural hematoma and brain injury, tibia fracture or right knee prosthetic fracture, rib fracture left hand finger fractures, or cervical strain. (Ex. 1) Plaintiff's experts were aware of those prior conditions and took those prior conditions into account when performing their evaluation. Certainly, Dr. Altman had to determine what injuries were caused by the subject incident and what complaints were pre-existing to perform his life care plan. Dr. Fulbright also discussed, in his report, the effects of Mrs. Musgrave's pre-existing conditions on her cognitive deficits. But those pre-existing conditions do not mean that Mrs. Musgrave did not suffer injury in this motor vehicle crash.

**IV.**
**CONCLUSION**

It is not clear why Defendant filed this Motion for Partial Summary Judgment claiming a lack of evidence. The Defendant has had, for quite some time, all of the billing records, the medical

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT                9**

records and the reports of the expert witnesses designated by Plaintiff. Perhaps it was an attempt by Defendant to pre-persuade the trier of fact. Whatever the reason, as this response has shown, there is a genuine issue of material fact for the issues raised by Defendant in its Motion for Partial Summary Judgment. Therefore, Defendant's Motion for Partial Summary Judgment should be denied.

Respectfully Submitted,

**LAW OFFICE OF J. GREGORY MARKS**

 /s/ J. Gregory Marks
**J. GREGORY MARKS**
Texas Bar No. 12994900
901 Main Street, Ste. 3670
Dallas, Texas 75202
Telephone: (214) 427-4417
Facsimile:  (214) 427-4417
gmarks@jgmarkslaw.com

And

/s/ Keith Purdue
Keith C. Purdue
SBN 24058060
kpurdue@injuryrelief.com
E. Michael Grossman
SBN 08544500
mgrossman@injuryrelief.com
GROSSMAN LAW OFFICE, P.C.
3890 W. Northwest Highway, Ste. 100
Dallas, Texas 75220
P: (214) 220-9191 | F: (214) 220-9127

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on September 15th, 2025, a true and correct copy of the above and foregoing document was filed using the Court's CM/ECF electronic filing system and served all counsel of record, pursuant to the Federal Rules of Civil Procedure.

       /s/ J. Gregory Marks

**J. GREGORY MARKS**

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**      **11**